IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 16-03052-CR-S-MDH |
| DEANDRE WALLS, | ) | |
| Defendant. | ) | |

## REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. Defendant Deandre Walls filed a Motion to Suppress any physical evidence on the basis of an unlawful search and seizure under the Fourth Amendment. (Doc. 33.) Additionally, Defendant seeks to suppress any and all statements he made to Detective Smith on February 29, 2016, alleging a violation of his Fifth and Sixth Amendment rights. A hearing was held on the Motion on March 7, 2017. Defendant Walls was present with counsel, John A. Tyrrell. The United States was represented by James J. Kelleher. For the reasons set forth below, **IT IS HEREBY RECOMMENDED** that the Motion to Suppress Defendant's Statements, (Doc. 33), be **DENIED** with regards to the Fifth and Sixth Amendment issues and be **DENIED as moot** and **without prejudice** as to the Fourth Amendment issue.

## FINDINGS OF FACT[1]

On February 25, 2016, Officers responded to a 9-1-1 call in Springfield, Missouri in which the caller reported Defendant was armed with a gun making unknown threats. (Def. Ex.

---

[1] The facts set forth herein are taken from the testimony adduced and the exhibits admitted at the hearing on the instant Motion. The hearing transcript appears as Doc. 53. The Government's exhibit index appears as Doc. 51, and Defendant's exhibit index appears as Doc. 52. After the hearing, the parties offered additional briefing and supplemental exhibits, (Docs. 58, 59, 62, 65), which the Court has considered.

3.)  When confronted by police, Defendant threw an object over a privacy fence and then attempted to jump over the fence.  (*Id.*)  After Defendant was detained, an officer found a Springfield brand 9mm pistol in the grass near the privacy fence.  (*Id.*)  On the other side of the privacy fence, officers found a Jennings 9 mm pistol.  (*Id.*)  Defendant was subsequently arrested and on February 26, 2016, was charged with counts of unlawful possession of a firearm and resisting arrest.  (*Id.*)  This was not Defendant's first charge, as the record shows he has a criminal history and has gone through police proceedings.[2]  (*Id.*)  On February 29, 2016, Defendant was arraigned at approximately 8:40 a.m. by video, where he was represented by counsel.  (Def. Ex. 2.)  There is no evidence showing Defendant received any *Miranda* warning prior to his arraignment.  (Doc. 53.)  Defendant was being held in the Greene County Jail after his arraignment when he contacted Detective Hollingsworth and requested to speak with Detective Smith.  (*Id.*)

On February 29, 2016, Detective Brian Smith, a detective with the Springfield Police Department, was contacted by Detective Hollingsworth of the Springfield Police Department. (Doc. 53.)  Detective Hollingsworth informed Detective Smith that Defendant wanted to speak with him, but was not specific.  (*Id.*)  Detective Smith was aware Defendant had been charged with being a felon in possession of a firearm, but did not know if Defendant had been arraigned. (*Id.*)  At the time Detective Hollingsworth contacted him, Detective Smith was investigating a shooting downtown that was unrelated to the incident on February 25, 2016 for which Defendant was charged. (Doc. 53.)  However, he believed Defendant was either a victim of or a witness to the shooting.  (*Id.*)  Detective Smith was not involved in the investigation concerning the

---

[2] On or about April 29, 2004, Defendant was found guilty of the felony of burglary in the second degree in the Circuit Court of Greene County, Missouri, in Case No. 31303CF10360. (*See* Doc. 65.)  On, or about April 20, 2004, Defendant was found guilty of the felony of possession of a controlled substance in the Circuit Court of Greene County, Missouri, Case No. 31303CF12231.  (*See Id.*)

2

February 25, 2016 incident. (*Id.*) Detective Smith did not go speak with Defendant to discuss the incident on February 25, 2016. (*Id.*) Rather, he contacted Defendant with the purpose of finding out what Defendant wanted to discuss. (*Id.*) He met Defendant in an interview room at the Greene County Jail at approximately 2:43 p.m. on February 29, 2016. (Gov't. Ex. 1.)

During his conversation with Defendant, Detective Smith did not read Defendant his *Miranda* rights nor was he aware of any other officers reading Defendant his *Miranda* rights prior to their conversation. (Doc. 53.) However, during the conversation initiated by Defendant, Detective Smith did not ask any guilt-seeking questions or question Defendant with regards to the February 25, 2016 incident. (*Id.*) During the interview, Defendant indicated that he did not want the interview to be recorded, but Detective Smith left the camera on because Missouri State law and department policy required him to do so. *(Id.)*

The recording of the interview shows the following. After advising Defendant of the purpose of his visit, Detective Smith entertained a number of questions from Defendant concerning his gun charges. (Gov't. Ex. 1.) During the exchange, Detective Smith repeatedly advised Defendant that he was conducting an investigation into the shooting that occurred downtown in which Defendant was believed to be the target (of the shooting). (*Id.*) Throughout the conversation, Defendant asked Detective Smith whether he could help him with his charge of unlawful possession of a firearm. (*Id.*) Detective Smith told Defendant – each time – that he was there to discuss the shooting downtown and that he could not guarantee anything or make any promises. (*Id.*)

Defendant, without prompting, then told Detective Smith he would "plead his case," presumably referring to the gun charge, if he could get the prosecutor to keep his February 26, 2016 charge in state court and not transfer it to the "feds." (Gov't. Ex. 1.) Detective Smith

3

responded by telling Defendant that he could not help him with his charges. (*Id.*) Defendant responded by saying, "you talk to the prosecutor and I will talk to you." (*Id.*) Moreover, Defendant repeatedly asked Detective Smith if he could keep his case at the state level in return for his cooperation. (*Id.*) Detective Smith asked Defendant a number of general questions, but at no time did he question Defendant in regards to the February 25, 2016 incident. (*Id.*) Throughout the exchange, Detective Smith sought to elicit cooperation from Defendant in regards to the unrelated shooting he was investigating in which Defendant was not a suspect, but a victim. (*Id.*) Once Detective Smith determined Defendant was not willing to provide information for his investigation, he terminated the conversation. (*Id.*)

## Conclusion of Law

In his Motion, Defendant alleges violations of his Fourth, Fifth, and Sixth Amendment rights. (Doc. 33.) Specifically, Defendant argues that he was not advised of his *Miranda* rights prior to making the statements. Alternatively, Defendant argues that because he was represented by counsel in the case arising out of the February 25, 2016 incident, his Sixth Amendment rights were violated. (*Id.*) The Government argues that Defendant initiated the exchange, during which he was not questioned with regard to the incident on February 25, 2016. (Doc. 40.) Furthermore, the Government argues that Defendant's Sixth Amendment right to counsel was not violated because his statements were spontaneous and unsolicited. (*Id.*) The argument regarding the Fourth Amendment violation is moot given the fact that the Government does not intend to introduce the physical evidence at trial. (Doc. 53.) Therefore, the Court will not entertain argument about the Fourth Amendment violation. As to the allegation of the Fifth Amendment violation, the Government readily concedes that Defendant in the matter was in custody. (Doc. 40.) The Court will address the Fifth and Sixth Amendment arguments below.

4

After the Court determines a person is in custody, it next determines if there was an interrogation. If the Court concludes that Detective Smith interrogated Defendant, the Court must suppress any inculpatory statements made in response thereto, because such questioning violates the Fifth Amendment. The allegation of the Sixth Amendment violation raises two issues: (1) whether Defendant's right to counsel attaches to an unrelated offense, and (2) whether Defendant voluntarily, knowingly, and intelligently waived his right to counsel.

1. **FIFTH AMENDMENT RIGHT**

In *Miranda v. Arizona*, the Supreme Court held that a criminal suspect must be informed of his right to be free from self-incrimination and the right to counsel before a custodial interrogation by law enforcement. 384 U.S. 436, 444 (1966). The *Miranda* court defined "custodial interrogation" generally as any situation in which a police officer has initiated questioning after a defendant has been deprived of his freedom of action in a significant matter. *Miranda*, 384 U.S. at 444. Moreover, statements elicited during custodial interrogation need not be suppressed if the prosecution can establish that the suspect "knowingly and intelligently waived his privilege against self-incrimination and right to counsel." *McNeil v. Wisconsin*, 501 U.S. 171, 176 (1991) (quoting *Miranda*, 384 U.S. at 475). The Supreme Court also established "a number of prophylactic rights designed to counteract the 'inherently compelling pressures' of custodial interrogation, including the right to have counsel present" during subsequent interrogations. *Id*. "Interrogation refers not only to express questioning but also to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Holman v. Kenma*, 212 F.3d 413, 418 (8th Cir. 2000) (citation omitted). Furthermore, an interrogation "must also reflect a measure of compulsion above and beyond that inherent in custody itself." *Id*. (citation omitted).

5

In this case, Defendant had been arraigned prior to the interview and was represented by counsel. However, Defendant contacted Detective Hollingsworth asking him to summon Detective Smith to the prison without providing specific information about what he wished to discuss. Additionally, during the conversation between Detective Smith and Defendant, Detective Smith did not attempt to elicit any incriminating statements from Defendant. Instead Defendant offered his own statements regarding the charges pending against him. Given these facts, the conversation was not coerced by police overreaching. *See Holman*, 212 F.3d at 419 (the fact that a defendant initiates a conversation lessens the likelihood of police overreaching or coercion). Further, the Court has reviewed the recording of the conversation, heard the testimony of Detective Smith, and believes, based upon the circumstances, that Defendant was not subject to a custodial interrogation. Although Detective Smith did not read Defendant his *Miranda* rights, Detective Smith did not act in a coercive manner and did not say or act in a way likely to elicit an incriminating response from Defendant. Accordingly, the Court does not believe their conversation—which was initiated by Defendant—rises to the level of an interrogation requiring the invocation of *Miranda*.[3]

Assuming *arguendo* that the conversation between Defendant and Detective Smith could be characterized as a custodial interrogation, the Court believes there was a valid waiver of Defendant's rights to remain silent and to have counsel present during custodial interrogation. "To determine whether or not there has been a valid waiver of an accused's rights to remain silent and to have counsel present during custodial interrogation under the Fifth Amendment, the court follows a two-step analysis." *Lamp v. Farrier*, 763 F.2d 994, 997 (8th Cir. 1985). First, the court considers whether the suspect evinces a willingness and a desire for a generalized discussion about the investigation. *Id*. If the suspect expressed such willingness and desire, the

---

[3] The Court does not opine on whether the statements are admissible at trial.

second inquiry focuses upon "whether the purported waiver was voluntary, knowing, and intelligent and found to be so under the totality of the circumstances." *Id.* The fact that the suspect, not the police, initiated the conversation with the authorities is a factor taken into consideration in resolving the waiver issue. *Id.* "A waiver is voluntary if it is the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Holman*, 212 F.3d at 420 (citation omitted). Additionally, "[a] waiver is knowing and intelligent if it has been made with full awareness of both the nature of the right being abandoned and the consequence of that decision." *Id*. (citation omitted).

Here, Defendant evinced a "willingness and a desire for a generalized discussion" about the incident in which he was believed to be the target. *See Oregon v. Bradshaw*, 426 U.S. 1039, 1045 (1983) (by initiating contact with police officer, defendant evinced willingness and a desire for a generalized discussion). Therefore, the Court believes Defendant waived his rights when he initiated the conversation with Detective Smith. *See Holman*, 212 F.3d at 420 ("To establish that a waiver is involuntary, there must be evidence that [a defendant's] will was overborne and his capacity for self-determination critically impaired, because of coercive police conduct."). Additionally, the evidence shows Defendant confirmed his desire to speak with Detective Smith. During their conversation, Detective Smith did not question Defendant in regards to the February 25, 2016 incident. Instead, Detective Smith sought to learn information regarding his investigation of an unrelated shooting from Defendant, who was not a suspect, but a victim. Further, Detective Smith terminated the conversation when he determined Defendant did not want to provide information relating to his investigation. Given these circumstances, Defendant voluntarily, knowingly, and intelligently waived his right to have counsel present during their conversation after his arraignment. Moreover, Defendant has a criminal history, which indicates

7

that he has some familiarity with police proceedings and weighs in favor of showing a valid waiver of the right to counsel. *See Lamp*, 763 F.2d at 998 (holding defendant's previous criminal history, awareness of police proceedings, and expressing a lack of desire to deal with the police officers only through counsel illustrate a valid waiver). Accordingly, the Court finds no violation of Defendant's Fifth Amendment rights.

### 2. SIXTH AMENDMENT RIGHT

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to have Assistance of Counsel for his defense." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (internal marks omitted). However, the Sixth Amendment right cannot be invoked once for all future prosecutions, as it is offense specific. *Id*. Once the right to counsel has attached and has been invoked, any subsequent waiver during a "police-initiated" custodial interview is ineffective. *See Id*. Furthermore, officers "cannot 'deliberately elicit' incriminating statements from the accused in the absence of counsel." *See United States v. Criswell*, 696 F.2d 636, 639 (8th Cir. 1983) (quotation omitted). Additionally, "waivers of an invoked right to counsel must be voluntary and must constitute a knowing and intelligent relinquishment of that right." *See United States v. Hull*, 419 F.3d 762, 767 (8th Cir. 2005) (quotation and internal marks omitted). A defendant's initiation of police interrogation alone is not sufficient to establish a waiver of that right. *See Owens v. Bowersox*, 290 F.3d 960, 964 (8th Cir. 2002).

First, Defendant does not have a Sixth Amendment right to counsel for every offense, but rather only for the offense for which he had been arraigned. *See McNeil*, 501 U.S. at 175. In this case, Detective Smith went to speak with Defendant about a matter unrelated to the offense for which Defendant had been charged. Therefore, no right to counsel was violated. Even assuming *arguendo* that Defendant's right to counsel had attached, courts have concluded that a defendant

8

Case 6:16-cr-03052-MDH   Document 66   Filed 07/11/17   Page 8 of 10

waives his right to counsel if he "voluntarily and knowingly initiates further communication, exchanges, or conversation with the police," as Defendant did here. *See Hull*, 419 F.3d at 768-69 (defendant effectively waived his constitutional rights when he voluntarily and knowingly initiated contact with police). Moreover, courts have concluded that a defendant "voluntarily, knowingly, and intelligently waives his right to counsel when the defendant confirms to the police officer that he did want to talk," as Defendant did here. *See Owens*, 290 F.3d at 964 (defendant effectively waived his right when the detective had the defendant confirm that he did want to talk prior to his "interrogation.") These circumstances, as well as Defendant's previous criminal history, the initiation, and the nature of the exchange, indicate Defendant voluntarily, knowingly, and intelligently waived his right to counsel.

Even assuming that his Sixth Amendment right to counsel had attached to *any* subsequent interrogations, Defendant initiated the contact with Detective Smith. Furthermore, as previously noted, the Court does not believe the conversation between Defendant and Detective Smith rises to the level of an interrogation. For the same reasons Defendant's Fifth Amendment right was not violated, even assuming that it was an interrogation, the Court finds no violation of Defendant's Sixth Amendment rights. The Court is aware that in this case the statements made during the conversation pertain to the offense in which Defendant was represented by counsel.[4] However, as noted: (1) the conversation was initiated by Defendant; (2) the conversation does not rise to the level of an interrogation; and (3) even assuming *arguendo* that it was an interrogation, the evidence shows a voluntary, intelligent, and knowing waiver of his right to counsel. As such, denial of Defendant's Motion is appropriate.

---

[4] From the recording, it appears that Defendant sought to make a deal on the felony charge for which he was being held in return for helping Detective Smith with his investigation of an unrelated shooting. (*See* Gov't. Ex. 1.)

9

## RECOMMENDATION

Therefore, based on the reasons set forth above, and pursuant to 28 U.S.C. § 636(b) and Local Rule 72.1 of the Unites States District Court for the Western District of Missouri, the undersigned hereby **RECOMMENDS**: that Defendant's Motion to Suppress Statements, (Doc. 33), be **DENIED** as to the Fifth and Sixth Amendment issues and be **DENIED as moot** and **without prejudice** as to the Fourth Amendment issue.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: July 11, 2017